IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| DONNA DIETERICH, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LARRY DIETERICH, DECEASED; KATHRYN DIETERICH; KIMBERLY DIETERICH; and JOHN KOPSICKER<br><br>"PLAINTIFFS"<br><br>vs.<br><br>INDUCTOTHERM CORP.<br><br>"DEFENDANT" | §§§§§§§§§§§§§§§§§ COMPLAINT AND JURY DEMAND |

1.
## PARTIES

1.1 PLAINTIFF DONNA DIETERICH is a resident of Revere, Missouri.

1.2 PLAINTIFF KATHRYN DIETERICH is a resident of Revere, Missouri.

1.3 PLAINTIFF KIMBERLY DIETERICH is a resident of Keokuk, Iowa.

1.4 PLAINTIFF JOHN KOPSICKER is a resident of Warsaw, Illinois.

1.5 DEFENDANT **INDUCTOTHERM** is a New Jersey corporation.

2.
## JURISDICTION AND VENUE

2.1 Jurisdiction is proper under 28 U.S.C. §1332.

2.2 Venue is proper as the incident occurred in Keokuk, Iowa.

2.3 The amount in controversy exceeds, exclusive of interest and costs the sum of $75,000.00.

### 3.
### PRELIMINARY INFORMATION

3.1 Based upon evidence and information currently known to Plaintiffs, on or about February 2, 2005, Larry Dieterich was fatally injured and John Kopsicker was seriously injured when an **INDUCTOTHERM** induction furnace malfunctioned causing an explosion at the Keokuk Steel Castings facility in Keokuk, Iowa.

3.2 The **INDUCTOTHERM** induction furnace was designed, manufactured and/or marketed by Defendant.

### 4.
### Product Liability Allegations

4.1 Defendant is liable to Plaintiffs under strict tort liability as Plaintiffs assert that the induction furnace was defective and unreasonably dangerous and that these defects resulted in its failure, causing the explosion and proximately causing the death of Larry Dieterich and the severe injuries to John Kopsicker.

4.2 Defendant designed, manufactured and/or marketed the induction furnace which exploded.

4.3 This product:

a. contained a defect;

b. which existed at the time the product left the possession and/or control of the Defendant;

c. the defect rendered the product unreasonably dangerous for its intended and reasonable foreseeable uses; and,

    d. the unreasonably dangerous condition of the product caused the death of Larry Dieterich and the injuries to John Kopsicker.

4.4 <u>Design Defect</u>:

    a  Plaintiffs assert that the induction furnace designed by **INDUCTOTHERM** was defective in its design.

    b. The design of the induction furnace rendered it unreasonably dangerous for its intended or reasonably foreseeable uses.

    c  Users of the furnace would not have contemplated the dangers in the normal and innocent use of the furnace;

    d. Additionally, the furnace could have been redesigned to eliminate the harm or danger which resulted.

    e  Further and/or in the alternative, other manufacturers design induction furnaces which are safer and which were feasible at the time of the manufacture of the furnace which caused the death of Larry Dieterich and the injuries to John Kopsicker.

    f. These alternative furnaces were viable alternatives which existed at the time of the manufacture of this faulty furnace.

    g. Also, the alternatives were technologically and economically feasible at the time of the manufacture of this faulty furnace.

4.5 <u>Manufacturing Defect</u>:

    a  Plaintiffs further state that the induction furnace was defectively manufactured.

    b. The induction furnace failed and/or malfunctioned to the extent that it exploded and resulted in the death of Larry Dieterich and the severe injuries to John Kopsicker.

    c. The induction furnace did not conform to design specifications.

    d. The induction furnace involved deficiencies and/or imperfections in construction, assembly or materials used.

    e. Further, it was defective because the condition of the induction furnace was one not contemplated by the ultimate consumer.

4.6 <u>Marketing Defect:</u>

    a. A marketing defect existed because **INDUCTOTHERM** did not warn of the dangers or risks of harm, and/or,

    b. **INDUCTOTHERM** failed to warn adequately, and/or,

    c. **INDUCTOTHERM** failed to provide instructions for safe use, and/or,

    d. **INDUCTOTHERM** failed to provide adequate instructions.

    e. The induction furnace marketed by **INDUCTOTHERM** contained a risk of harm that was inherently dangerous in the product and/or that arose from its reasonably anticipated use;

    f. **INDUCTOTHERM** knew or was in a position to reasonably foresee the risks of harm at the time the induction furnace was marketed;

    g. the induction furnace possessed a product defect; and

    h. the absence of warning and/or instruction rendered the induction furnace unreasonably dangerous; and,

    i. the failure to warn and/or instruct caused the resulting injuries and damages.

4.7 <u>Breach of Warranties</u>

    a. Plaintiffs would further assert that these defects were a producing cause of the incident and the damages sustained by Plaintiffs Donna Dieterich, Kathryn Dieterich, Kimberly Dieterich and John Kopsicker.

b. Furthermore, the defects were a breach or breaches of implied and/or express warranties under the Restatement of Torts.

c. Further, the Defendant breached the implied warranty of fitness and the implied warranty of merchantability pertaining to the induction furnace in question.

d. At the time that the Defendant sold the induction furnace in question, it knew or had reason to know of the particular purpose for which the products were being purchased and that the buyer was relying on the Defendant's skill and/or judgment to select or furnish a suitable product.

e. The Defendant's actions created an implied warranty that each of the induction furnaces were fit for a particular purpose; such warranty running to the benefit of those using the furnace.

f. Because the induction furnace was in fact not suitable for the its particular purposes, the Defendant has breached the implied warranty of fitness for a particular purpose

g. Further, the Defendant was a merchant of products similar to and including the ones received and used by Larry Dieterich and John Kopsicker.

h. Such items as sold, marketed, and/or distributed violated the implied warranty of merchantability.

i. Such breaches of these implied warranties by this Defendant were each a proximate cause of the injuries and damages sustained by the Plaintiffs.

## 5.
### Negligence and Gross Negligence Allegations

5.1 Plaintiffs further assert that **INDUCTOTHERM** is liable in that it was negligent by one or more acts, omissions or statutory violations and that this negligence was a proximate cause of the incident and damages to Plaintiffs.

5.2 Plaintiffs would further plead liability under the negligence theory of res ipsa loquitur.

5.3 Plaintiffs would further show that **INDUCTOTHERM**, through its actions, exhibited heedless and reckless disregard for the safety and welfare of others and is guilty of gross negligence and liable to Plaintiffs for punitive/exemplary damages.

5.4 **INDUCTOTHERM** was grossly negligent in failing to inform Plaintiffs of the hazards associated with the use of the induction furnace in question and in failing to give proper, adequate, or sufficient instructions and warnings regarding the hazards associated with the use of the products in question.

5.5 Such negligence and gross negligence was a proximate cause of Plaintiffs' injuries and damages.

5.6 In addition, the Defendant was negligent and grossly negligent in its failure to perform proper and sufficient pre-marketing tests on the induction furnace in question and in its failure to inform adequately and sufficiently the consumers of the potential risks and hazards associated with the use of the induction furnace made the basis of this suit. Such negligence and gross negligence was a proximate cause of the Plaintiffs' injuries and damages.

5.7 Pleading further, and in the alternative, Plaintiffs allege that the Defendant misrepresented and/or omitted information and safety materials that induced them into making a less than informed decision with respect to the induction furnace in question.

5.8 Such misrepresentation was the proximate cause of the damages suffered by Plaintiffs.

5.9 In addition, such failure to inform and warn, or misrepresentation of material information, was knowingly done or done in conscious disregard for the well being of the persons using such furnace.

5.10 This act was a proximate cause of the damages suffered by Plaintiffs, thus entitling the Plaintiffs to both actual and punitive damages.

## 6.
## DAMAGES

6.1 As a proximate and/or produced result of the Defendant's defective product and product components, breaches of implied warranties, and negligence and gross negligence, the Plaintiffs have suffered substantial injuries and damages.

6.2 Plaintiffs respectfully request the Court and jury to determine the amount of the loss they have incurred in the past and will incur in the future, not only from a financial standpoint.

6.3 There are certain elements of damages provided by law that Plaintiffs are entitled to have the jury in this case separately consider in determining the sum of money that will fairly and reasonably compensate them for their injuries and damages. Those elements of damage include the following, both up to the time of trial and beyond:

a. Plaintiffs Donna Dieterich, Kathryn Dieterich and Kimberly Dieterich's damages as a result of the death of Larry Dieterich include the following:
   1. Wrongful Death Damages:
      a. Pecuniary loss in the past and future;
      b. Loss of companionship and society, past and future;
      c. Mental anguish, past and future;
      d. Loss of inheritance.
   2. Survival Damages:
      a. Compensatory damages for the pain and mental anguish experienced by Larry Dieterich prior to his death;
      b. Medical Expenses incurred on behalf of Larry Dieterich;
      c. Funeral and burial expenses incurred to bury Larry Dieterich;
      d. Wage Loss.

b. Plaintiff John Kopsicker's damages include the following:

too

1. Physical pain and mental anguish, past and future;
2. Medical expenses, past and future;
3. Lost wages and loss of earning capacity;
4. Physical disfigurement, past and future;
5. Physical impairment, past and future

c. Plaintiffs are also entitled to recover exemplary damages;
d. Plaintiffs further claim prejudgment interest on their claims;
e. Plaintiffs seek damages in a sum far in excess of the minimum jurisdictional limits of this Court

## 7.
## JURY REQUEST

Plaintiffs hereby request a jury trial.

## 8.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendant be cited to appear and answer herein; that upon final trial hereof Plaintiffs have judgment against the Defendant, for the full amount of their damages as well as pre-judgment interest at the maximum legal rate, post-judgment interest at the maximum legal rate, costs of court, and all other relief, general and special, at law or in equity, to which they may show themselves justly entitled.

_____
Nathaniel R. Boulton (PK 22961)
Mark T. Hedberg (PK 483767367)
Hedberg, Owens, Hedberg & Walsh, P.C.
840 Fifth Avenue
Des Moines, IA 50309
Phone: (515)288-4146
Fax:    (515) 288-3320

ATTORNEYS FOR PLAINTIFFS