IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| DONNA DIETERICH, individually and as personal representative of the Estate of Larry Dieterich, deceased, KATHRYN DIETERICH, KIMBERLY DIETERICH, and JOHN KOPSICKER,<br><br>Plaintiffs,<br><br>vs.<br><br>INDUCTOTHERM CORP.,<br><br>Defendant. | Civil No: 3:06-cv-00004-HDV<br><br><br>RULING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiffs Donna Dieterich, individually and as personal representative of the estate of Larry Dieterich, Kathryn Dieterich, Kimberly Dieterich, and John Kopsicker bring state law claims against defendant Inductotherm Corporation. This court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806), overruled on other grounds by Louisville, Cincinnati, & Charleston R.R. Co. v. Letson, 43 (2 How.) U.S. 497, 554-56 (1844). The parties agree, and I conclude, that Iowa law governs.

Inductotherm moves for summary judgment on all of plaintiffs' claims. In response, plaintiffs abandon claims of gross negligence, punitive damages, design defect, misrepresentation, and breach of express warranty. Plaintiffs resist summary judgment on claims of failure to train, breach of implied warranty of merchantability, breach of implied warranty of fitness, and manufacturing defect. I heard oral argument on May 29, 2008, and the motion is submitted.

**MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment is properly granted only when the record, viewed in the light most

favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Walsh v. United States, 31 F.3d 696, 698 (8th Cir. 1994). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The substantive law at issue governs which facts are material, and irrelevant or unnecessary fact disputes do not preclude summary judgment. Id.

## FACTS

Pursuant to LR 56(a)(3), Inductotherm filed a statement of material facts in support of its motion for summary judgment. Plaintiffs, in compliance with LR 56(b)(2), filed a response to Inductotherm's statement. In the response, plaintiffs object to many of Inductotherm's statements of material fact, arguing that they do not comply with the requirement in LR 56(a) that each statement be "concise, numbered separately, and supported" by citations to the record. The paragraphs that plaintiffs identify—10, 11, 12, 13, 14, 15, 16, 19, 20, 21, 22, and 23—are not in compliance, and material facts asserted by Inductotherm in those paragraphs are not considered in evaluating its motion for summary judgment.

Additionally, in accordance with LR 56(b)(3), plaintiffs filed a statement of additional material facts that they contend preclude summary judgment. As the party moving for summary judgment, Inductotherm is required to respond to plaintiffs' statement of additional facts by either admitting them or denying them and citing record evidence in support of any denial. LR 56(d). Failing to deny an additional fact is an admission of that fact. Id. Inductotherm did not respond to plaintiffs' statement of additional material facts, and thus, each is admitted. Considering only facts presented properly, I will evaluate the motion pursuant to the undisputed

facts or plaintiffs' version of genuinely disputed facts. Fed. R. Civ. P. 56.

Larry Dieterich and John Kopsicker were employees at the Keokuk Steel Casings Plant (KSC) in Keokuk, Iowa. On February 2, 2005, a furnace used to melt steel at KSC exploded. Inductotherm manufactured the furnace. The explosion occurred when the furnace overheated during the installation of a new furnace bath liner, a process called "sintering." Overheating caused molten metal to breach the lining, enter the cooling system, and trigger the explosion, killing Mr. Dieterich and severely injuring Mr. Kopsicker.

In September 2002, Inductotherm set up, and oversaw the installation of, the furnace that exploded. Inductotherm sold the furnace to KSC under a written warranty. The warranty document includes disclaimers of both an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. Both disclaimers are typed in all capital letters while the rest of the document is in plain text. The disclaimers are not in bold or in larger type than the other text.

Inductotherm designed and manufactured the furnace to include a component called the Melt Manager, which would control furnace temperature during sintering of new linings and during normal melts. The Melt Manager did not work properly from the time it was installed. Inductotherm had contracted with KSC to train KSC's employees on operating the furnace and Melt Manager, but Inductotherm failed to do so adequately. Inductotherm representatives visited KSC for service calls numerous times after the furnace was installed. During these visits, Inductotherm personnel were present when KSC employees operated the furnace without using the Melt Manager. Inductotherm employees did not ask why KSC did not use the Melt Manager.

One of the features of the Melt Manager is a program designed to automatically sinter a

new lining, greatly reducing any potential for human error. KSC did not use the Melt Manager during the September 2002 sintering process because it never worked. During the process, a "bridge" developed, which is a condition during a melt where a "cap" or "cover" harder than the molten metal below it develops over the top of the furnace's molten bath. A bridge can lead to superheating of the bath, and unchecked, can cause an explosion. KSC employee John Harper "cleared" the bridge—that is, he "tilted it back . . . got an opening in it . . . and . . . it went down"—at least thirty minutes before the explosion occurred. The superheating condition that led to the explosion could have occurred with or without a bridge.

The Inductotherm furnace also had the capacity to use thermocouples, which are wire-like instruments used to detect the furnace's temperature. Thermocouples were not used for the September 2002 sintering. The temperature required for sintering, however, is too high for thermocouples to give an accurate reading. Even if thermocouples had been used, they would not have prevented the furnace from overheating.

## DISCUSSION

### Manufacturing Defect Claim

Inductotherm argues in favor of summary judgment on plaintiffs' manufacturing defect claim. Plaintiffs claim that the Melt Manager did not work when it was delivered and argues that this constituted a product defect that caused the explosion. Inductotherm responds that the Melt Manager did work after delivery. Plaintiffs cite testimony of two plant employees, Inductotherm cites different, more extensive evidence. Thus, this is a genuine dispute of material fact making summary judgment not appropriate. See Anderson, 477 U.S. at 248. Inductotherm, however, argues that plaintiffs' evidence constitutes only a scintilla when compared to Inductotherm's

4

larger volume of evidence, and that the dispute, therefore, is not genuine. Testimony of two plant employees is not a scintilla. Balancing or weighing evidence is not proper when ruling on a motion for summary judgment, but is instead the province of a jury. Id. at 249. I conclude there is a genuine dispute of material fact, and the motion will be denied in respect to plaintiffs' manufacturing defect claim.

## Implied Warranty Claims

Inductotherm also argues that summary judgment is appropriate on plaintiffs claims that Inductotherm breached implied warranties of both merchantability and fitness for a particular purpose. Inductotherm raises a disclaimer defense, asserting that it disclaimed implied warranties of merchantability and fitness for a particular purpose. In a commercial sale, a seller may exclude an implied warranty of either merchantability or fitness for a particular purpose. Iowa Code § 554.2316. A disclaimer of an implied warranty is an affirmative defense. See id.; see also Williams v. Gradall Co., 990 F. Supp 442 (E.D. Va. 1998) (citing Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 23 (2d Cir. 1995)); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1227 (1st Cir. 1994). Because disclaimer is an affirmative defense, Inductotherm must establish every essential element in order to shift the burden to plaintiffs to respond. Eaton v. Marion County Fair Association, 172 F. Supp. 2d 1184, 1187 (S.D. Iowa 2001).

Inductotherm asserts that the furnace was sold to KSC under a written warranty and that the warranty document expressly disclaims implied warranties of both merchantability and fitness for a particular purpose. Plaintiffs assert that Inductotherm has not produced any evidence that the warranty document was delivered to KSC. Plaintiffs contend that delivery of a

5

disclaimer document is an essential element of a disclaimer of warranty affirmative defense, citing Minnesota law.[1]  See Noel Transfer & Package Delivery Service, Inc. v. General Motors Corp., 341 F. Supp. 968, 970 (D. Minn. 1972) (stating that under Minnesota law, defendants had to establish delivery of the document containing the disclaimer).  Plaintiffs argue that because Inductotherm cites no evidence of delivery, it has not met its burden to establish each element of its affirmative defense.  Plaintiffs do not deny, however, that the warranty document was delivered; only that Inductotherm has not supported that proposition with evidence.

Inductotherm asserts that the furnace was sold under a written warranty.  "A response to an individual statement of material fact that is not expressly admitted must be supported by references to [appendix materials] that support the resisting party's refusal to admit the statement . . . .  The failure to respond [accordingly] to an individual statement of material fact constitutes an admission of that fact."  LR 56(b).  Plaintiffs do not deny that the furnace was sold under the warranty or that the document reflects that warranty.  Inductotherm's reference to the written warranty document is sufficient to require plaintiffs to respond to the statement of material fact.  According to LR 56(b), because plaintiffs did not deny Inductotherm's statement of fact, it is admitted.  Inductotherm has met its burden under LR 56 to establish that the furnace was sold with the cited warranty document.

The question then becomes whether the warranty document adequately disclaims implied warranties.  Under Iowa law, "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be

---

[1] Plaintiffs have not cited an Iowa delivery requirement for disclaimers of implied warranty.

6

conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Iowa Code § 554.2316(2). The parties dispute only whether the writing in the warranty document is conspicuous. The Iowa Code contains the following definition of conspicuous:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . . Whether a term or clause is "conspicuous" or not is for decision by the court.

Iowa Code § 554.1201(10) (2002). The warranty document's language disclaiming both an implied warranty of merchantability and an implied warranty of fitness for a particular purpose is in all capital letters. Iowa's requirement that such disclaimers be conspicuous is met by the language being in all capital type, because it is in contrasting type to the surrounding text. Id. Inductotherm, therefore, adequately disclaimed implied warranties of merchantability and fitness for a particular purpose pursuant to Iowa Code § 554.2316(2) and is entitled to summary judgment on plaintiffs' claims for alleged breach of those warranties.

Failure to Train Claim

Inductotherm argues that it did not have a duty to train KSC employees to operate the furnace and that plaintiffs' failure to train claim is tantamount to a claim of failure to warn. Plaintiffs cite no case law regarding a general duty to train, but argue that Inductotherm's duty was created by the purchase agreement for the furnace between Inductotherm and KSC. The furnace purchase agreement notes that Inductotherm agreed to train KSC employees to use the furnace. Plaintiffs also argue that Inductotherm held out the furnace as mistake-proof.

Inductotherm does not contest that there was an agreement between the parties, but argues that it did train KSC employees, provided instruction and safety materials, and quickly

responded to KSC's requests for support and service. Plaintiffs dispute Inductotherm's assertions and argue that Inductotherm's training was inadequate. Whether Inductotherm adequately trained KSC's employees is a genuine dispute of material fact. Inductotherm's motion for summary judgment will be denied in respect to plaintiffs' failure to train claim.

## Res Ipsa

Inductotherm argues last that plaintiffs should not be allowed to submit a general negligence claim under the theory of *res ipsa loquitor* because the furnace was under KSC's exclusive control at the time of the accident.

> Res ipsa loquitur (Latin for "the thing speaks for itself") is only a rule of evidence. It is not a rule of substantive law. Palleson v. Jewell Co-op. Elevator, 219 N.W.2d 8, 13 (Iowa 1974). Res ipsa loquitur applies when "'(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used.'" Brewster v. United States, 542 N.W.2d 524, 529 (Iowa 1996) (quoting Mastland, Inc. v. Evans Furniture, Inc., 498 N.W.2d 682, 686 (Iowa 1993)).

Weyerhaeuser Co. v. Thermogas Co., 620 N.W.2d 819, 831 (Iowa 2000). Inductotherm argues that plaintiffs cannot prove the exclusive control element because the furnace was installed at KSC more than two years before the explosion. Plaintiffs respond that Inductotherm's negligence occurred not at the time of the explosion, but when Inductotherm manufactured or installed the furnace and did have exclusive control.

Because plaintiffs allege Inductotherm was negligent in manufacturing or installing the furnace and assert that Inductotherm had exclusive control at that time, summary judgment on a *res ipsa loquitor* theory of negligence is not appropriate. Of course, whether plaintiffs will be able to establish a submissible jury question on their *res ipsa loquitor* theory remains to be seen. Inductotherm's motion for summary judgment will be denied in respect to plaintiffs' theory of

8

recovery under *res ipsa loquitor*.

## CONCLUSION

For the reasons articulated above, defendant Inductotherm Corporation's motion for summary judgment is **GRANTED** in respect to plaintiffs' claims of gross negligence, punitive damages, design defect, misrepresentation, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of express warranty; it is **DENIED** in respect to plaintiffs' claims of manufacturing defect, failure to train, and plaintiffs' general negligence theory of *res ipsa loquitor*.

Dated this 18th day of July, 2008.

_____
HAROLD D. VIETOR
Senior U.S. District Judge